ORIGINAL

IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 5 2003

ORIGINAL

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| AMIE OWENS, on her behalf and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 3-03CV0620-M |
| v. | § § | Judge Lynn |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY a/k/a/ GEICO | § § § | Collective Action Pursuant to 29 U.S.C. § 216(b) |
| Defendants. | § § | |

---

## PLAINTIFF'S MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS

---

**J. DEREK BRAZIEL**
*Attorney in Charge*
Texas Bar No. 00793380
208 N. Market Street, Suite 400
Dallas, Texas 75202
(214) 749-1400   phone
(214) 749-1010   fax

**RICHARD J. BURCH**
S.D. Tex. No. 21615
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
5847 San Felipe, Suite 3900
Houston, Texas 77057
(713) 877-8788   phone
(713) 877-8065   fax

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

I.    OVERVIEW..................................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................... 2

III.  REQUEST FOR § 216(B) NOTICE TO POTENTIAL PLAINTIFFS.............................. 4

      A.    Legal Standards:  The District Court is Authorized to Issue Notice to the
            Potential Opt-in Plaintiffs and Should Do So Immediately. .................................... 4

            1.    The Court Should Use the Two-Stage Approach in Issuing Notice
                  to Potential Plaintiffs................................................................... 6

            2.    Notice to Potential Plaintiffs is Appropriate on the Facts
                  Presented. .................................................................................. 8

      B.    Relief Sought:  Issuance of Notice to Potential Plaintiffs and Disclosure of
            Names and Addresses .......................................................................... 9

IV.   CONCLUSION ................................................................................................ 10

## TABLE OF AUTHORITIES

### CASES

PAGE

*Barnett v. Countrywide Credit Indus., Inc.,*
   No. 3-01CV1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) ................. 1,6,9

*Belcher v. Shoney's, Inc.,*
   927 F. Supp. 249, 251 (M.D. Tenn. 1996) ......................................................... 5

*Brooks v. Bellsouth Telecom,*
   164 F.R.D. 561, 568 (N.D. Ala. 1995) ............................................................. 6

*Dybach v. State of Fla. Dept. of Corrections,*
   942 F.2d 1562, 1567-68 (11th Cir. 1991)....................................................... 5,8,9

*Garner v. G.D. Searle Pharm.,*
   802 F. Supp. 418, 419 (M.D. Ala. 1991)........................................................... 5

*Grayson v. K Mart Corp.,*
   79 F.3d 1086, 1096 (11th Cir. 1996).......................................................... 5,6,8

*H & R Block, Ltd. v. Housden & Beard,*
   186 F.R.D. 399, 400 (E .D. Tex. 1999) ........................................................... 7,8

*Hipp v. Liberty Nat'l Life Ins. Co.,*
   164 F.R.D. 574, 575, 576 (M.D. Fla. 1996) ....................................................... 5

*Hoffman-La Roche, Inc. v. Sperling,*
   493 U.S. 165, 169 (1989) ............................................................................ 5

*Mooney v. Aramco Services Co.,*
   54 F.3d 1207, 1213-14 (5th Cir. 1995)....................................................... 5,6,8

*Shushan v. Univ. of Colorado,*
   132 F.R.D. 263, 265 (D. Colo. 1990)............................................................. 7

*Sperling v. Hoffman-Laroche, Inc.,*
   118 F.R.D. 392, 406-07 (D.N.J. 1988)........................................................... 6

*Thiessen v. General Elec. Capital Corp.,*
   267 F.3d 1095, 1105 (10th Cir. 2001)............................................................. 7

*Tucker v. Labor Leasing, Inc.,*
   872 F. Supp. 941, 947 (M.D. Fla. 1994) ......................................................... 5

## STATUTES

PAGE

29 U.S.C. § 207(A) ................................................................................................... 2

29 C.F.R. § 778.101 .................................................................................................. 2

FAIR LABOR STANDARDS ACT ("FLSA"), 29 U.S.C. § 216(B) ................................... *passim*

## RULES

Fed. R. Civ. P. 20(a) ................................................................................................ 5

Fed. R. Civ. P. 23 ................................................................................................... 5,7

## MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS

Plaintiff, individually, and on behalf of other similarly-situated current and past employees of Defendant, files this Motion for Notice to Potential Plaintiffs, and would show the Court as follows:

**I.**
**OVERVIEW**

GEICO fails to pay its hourly, telephone-dedicated employees for all hours they perform work for the company. Specifically, GEICO fails to pay telephone-dedicated employees in the Sales, Customer Service, Direct Handling, PBX, and Billing departments. These employees are required to arrive at work anywhere from 15 to 20 minutes (or more) early and to perform work without getting paid. Additionally, these employees are required to stay 15 to 20 minutes (or more) after their assigned shift times without getting paid. GEICO requires telephone-dedicated employees to "log in" and "log out" of the phone system. The log in/out times correspond to the assigned shift times for these employees. However, GEICO only pays its employees for their assigned shifts (or for approved overtime). GEICO does not pay employees for the time they spend working before and after their assigned shifts. While some may contend that 30 to 40 minutes per day is not a great deal of time, this time can add up to over 200 minutes (3.33 hours) per week. To an hourly employee, two to three unpaid hours per week is a substantial and meaningful underpayment. For years, GEICO has reaped the benefits if its errant scheme.

This Court is familiar with the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), having determined that nationwide notice was appropriate in *Barnett v. Countrywide Credit Industries*, No. 3-01CV1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002). As in *Barnett*, Plaintiff seeks nationwide notice concerning GEICO's practice of failing to pay employees for all hours they perform work for the company. To date,

27 individuals have elected to opt in to this suit, but there are others who are not aware of this suit or aware of their rights to proceed in this forum. A notice to potential plaintiffs will allow current and former employees to be aware of their rights and allow them to make an informed decision as to whether or not to proceed in this case. Moreover, because the recovery for each potential plaintiff who is a former employee is eroding daily, the Court should authorize Notice as soon as possible.[1]

## II.
### FACTUAL BACKGROUND

The FLSA requires payment of overtime compensation to all non-exempt employees when they work in excess of forty (40) hours in one week 29 U.S.C. § 207(a); 29 C.F.R. § 778.101.

Plaintiff is employed by GEICO as a Sales Associate in the Dallas, Texas call center. (Owens Decl., Exh. A, ¶ 2). Like other telephone-dedicated employees in GEICO call centers, Plaintiff is assigned a shift time to begin and end her work day. (*Id.*) Plaintiff is required to be available to answer calls within only a couple of minutes of her assigned shift time or she is subject to discipline. (*Id.*, ¶ 11). She is required to log in/out at her assigned shift time unless she is on a call that goes beyond her shift time. (*Id.*) Plaintiff is a telephone-dedicated employee in that she is required to be on the phone during the day and she has limited breaks where she can be away from the phone. She is paid an hourly wage based on the time she is actually logged into the phone system. (*Id.*)

In order to be ready to take calls at her assigned time, Plaintiff was told by GEICO to arrive at work at least 15 minutes before the shift begins so she can be ready to take calls at the

---

[1]     The FLSA statute of limitations runs from the date an individual opts in to the case. Consequently, for former employees who are no longer being subjected to the illegal practice, every day without notice is a day's pay they lose forever.

appointed hour. (*Id.*, ¶ 12). In order to be prepared to take calls, Plaintiff must perform a variety of pre-shift duties. (*Id.*, ¶ 5-9). These duties include, but are not limited to, booting up her computer, checking email from supervisors and managers, bringing the Sales Talk systems on line, bring up the Directnet system, and signing on to Imspod and Cisprod Screens. (*Id.*). Additionally, Plaintiff is required to work after her assigned shift in order to conclude her activities for the day. (*Id.*, ¶ 10). At the end of the day, Plaintiff is required to shut down all emulators, the Directnet system, the e-mail system and the computer. (*Id.*). She must also carry any faxes received during the day to the central interoffice mail box. (*Id.*). Plaintiff must also be sure that any policyholders who required "proof of coverage" have been faxed or e-mailed the requested documents. (*Id.*). Any additional documentation must be completed and the employee's work area must be cleaned before the leaving for the day. (*Id.*).

Plaintiff inquired with GEICO's Human Resources department about the policy of not paying employees for their pre-shift and post-shift work. (*Id.*, ¶ 13). Plaintiff was informed that GEICO did not pay for such time as a matter of policy. (*Id.*). That this was GEICO's policy is supported by the declaration of Jeffrey Archer who is a former Sales Manager in Dallas and who also worked in Virginia. Archer testifies that he also inquired about whether associates were to be paid for pre- and post-shift time. (Archer Decl., Exh. B, ¶ 6). Human Resources told him that GEICO's policy is to not pay for that time. (*Id.*)

GEICO's policy of underpaying its telephone-dedicated employees goes beyond Texas. The declarations of individuals who worked in Texas, California, Florida, Georgia, Virginia, and New York have been included with the appendix to this Motion.[2] (See Exhibits A-H). Each of

---

[2]     At this early stage, and without a Court-approved notice, Plaintiff has been able to secure declarations from individuals working at GEICO facilities in other states. Plaintiff intends to supplement its appendix with additional declarations from other states if those arrive in the next week. These declarations are intended to inform the Court of the uniformity of GEICO's practice.

these individuals testifies that they were required to perform work for the company outside of their assigned shifts and they were not paid for the work. (*Id.*). Their testimony about being required to conduct pre-shift and post-shift work without pay mirrors the allegations made by Plaintiff Owens. (*Id.*). For each declarant, they understood it to be a requirement to perform work before and after their shifts without pay. The actual tasks may vary from person to person and state to state, but the policy stays the same and it is illegal – GEICO only pays telephone-dedicated employees for the time they are on the phones, no matter how much work they do before and after the shift.

Plaintiff is joined in this suit by 27 other individuals who contend they were not paid properly for their pre- and post-shift activity. (See Notice of Filing Notices of Consent and Exhibit A to Plaintiff's Complaint). GEICO maintains at least ten (10) regional office/service centers with telephone-dedicated employees. These facilities are in Dallas, Texas; San Diego, California; Tucson, Arizona; Coralville, Iowa; Macon, Georgia; Lakeland, Florida; Fredericksburg, Virginia; Virginia Beach, Virginia; Honolulu, Hawaii; and Woodbury, New York. Plaintiff is aware of other individuals who were required to work without pay at these other facilities. (Exh. A, ¶ 14).

### III.
#### REQUEST FOR § 216(B) NOTICE TO POTENTIAL PLAINTIFFS

**A.    Legal Standards:   The District Court is Authorized to Issue Notice to the Potential Opt-in Plaintiffs and Should Do So Immediately.**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to

the suit. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170-172.

Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Services Co.* 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996). Plaintiffs' claims and positions need not be identical to the potential opt ins, they need only be similar. *Grayson*, at 1096; *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994). Plaintiffs need only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Grayson*, 79 F.3d at 1097.

Court facilitated notice to the "class" regarding the FLSA collective action is warranted when plaintiffs demonstrate that there are others who may wish to opt in and who are "similarly situated" with respect to the job requirements and pay provisions. *Dybach v. State of Fla. Dept. of Corrections.*; 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Garner v. G.D. Searle Pharm.*, 802 F. Supp. 418, 419 (M.D. Ala. 1991); *Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 575, 576 (M.D. Fla. 1996); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996). The standard for collective action notice is a "lenient" standard. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). "It is considerably 'less stringent' than the proof required pursuant to Fed. R. Civ. P. 20(a) for a joinder or Fed. R. Civ. P. 23 for class certification." *Grayson*, 79 F.3d 1086, 1096 (11th Cir. 1996).

1.     **The Court Should Use the Two-Stage Approach in Issuing Notice to Potential Plaintiffs.**

The Fifth Circuit has acknowledged two different approaches that may apply in deciding whether notice should be issued to potential plaintiffs – the two-stage approach and the Rule 23 approach. *Mooney*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). Although the Fifth Circuit has not specified which of the two tests courts must follow, this Court recently, and correctly, noted the two-stage approach is "the prevailing test among the federal courts . . . ." *Barnett v. Countrywide Credit Indus., Inc.*, No. 3-01CV1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002). In that case, this Court permitted Court-approved notice to a group of over 5000 Loan Officers of Countrywide Home Loans, Inc.

This Court succinctly stated the two step process as follows:

> First, the Court must make an initial inquiry into whether the Plaintiff has provided sufficient evidence that similarly situated potential Plaintiffs exist. At this stage, the Court uses a lenient standard to determine whether similarly situated persons exist, and if the Court determines that certification is appropriate, then it usually "conditionally certifies" the class. Second, the Court reexamines the class after notice, time for opting-in, and discovery have taken place. If the Court finds that the class is no longer made up of similarly situated persons, then it may decertify the class. This inquiry is usually conducted upon a motion filed by the Defendant.

*Id.* at * 1 (citations omitted). At the notice stage, courts usually determine whether plaintiffs and potential opt ins are "similarly situated" based upon the allegations in a complaint supported by affidavits. *Grayson*, 79 F.3d at 1097; *Mooney*, 54 F.3d at 1213-14; *Brooks v. Bellsouth Telecom.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling v. Hoffman-Laroche, Inc.*, 118 F.R.D. 392, 406-07 (D.N.J. 1988), *aff'd* 493 U.S. 165, 110 S. Ct. 482 (1989).

Under the two-stage approach, once the court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *Mooney*, 54 F.3d at 1214. Discovery is relevant thereafter both as to the merits of the

case and for the second step in the collective action procedure where the court evaluates conflicting evidence developed in discovery to test the validity of the preliminary decision made at the notice stage. *Id.* Allowing early notice and full participation by the opt ins, "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling*, 118 F.R.D. at 406. Once the notice and opt in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action.

The *Mooney* court identified a second approach to class notice that was first used by a Colorado District Court in *Shushan v. Univ. of Colorado*, 132 F.R.D. 263, 265 (D. Colo. 1990). This approach uses the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation to discern whether notice should be issued. While the Fifth Circuit noted this approach in *Mooney*, the Tenth Circuit (which includes the *Shushan* district court), has recently all but rejected the *Shushan* approach and found it inappropriate to strictly apply the Rule 23 factors in FLSA cases:[3]

> Arguably, the *ad hoc* [two stage] approach is the best of the three approaches outlined because it is not tied to the Rule 23 standards. Congress clearly chose not to have the Rule 23 standards apply to class actions under the ADEA, and instead adopted the "similarly situated" standard. To now interpret this "similarly situated" standard by simply incorporating the requirements of Rule 23 (either the current version or the pre-1966 version) would effectively ignore Congress' directive.

*Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). The court went on to state that all approaches essentially allow for consideration of "the same or similar factors." *Id.* Thus, the same measure of evidence should support class notice under either approach and

---

[3] Though the case was in the context of the ADEA, the analysis in ADEA cases involving questions of the opt-in process should be applied to cases solely based on the FLSA. *See generally H & R Block, Ltd. v. Housden & Beard,* 186 F.R.D. 399, 400 (E .D. Tex. 1999).

this Court should adopt the two-stage approach in analyzing Plaintiffs' request for notice to potential plaintiffs.[4]

### 2.    Notice to Potential Plaintiffs is Appropriate on the Facts Presented.

Further discovery is not necessary for this Court to issue notice. At the notice stage, courts usually determine whether plaintiffs and potential opt ins are "similarly situated" based upon allegations in a complaint supported by affidavits. *Mooney*, 54 F.3d at 1213-14; *Grayson*, 79 F.3d at 1097. Defendant's rebuttal evidence does not bar section 216(b) notice, plaintiffs' substantial allegations need only successfully engage the employer's affidavits to the contrary. *Grayson*, 79 F.3d at 1099 n.17.

In order for Notice to issue, some evidence of "a single decision, policy, or plan" should be presented. *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (emphasis added). Proof of a single practice can be provided through affidavits of potential plaintiffs, identification of potential plaintiffs, and/or evidence of a widespread plan. *Id.* (citations omitted). In addition to these factors, other courts making the notice inquiry have sought to determine if there are other individuals who desire to opt in and who are similarly situated to those bringing the suit. *Dybach*, 942 F.2d at 1567-68. Thus, if other parties join the suit by filing their consents, this is evidence of a desire on the part of others to join the suit that should be considered by the Court.

In the present matter, Plaintiff has met the lenient standard of showing that notice to potential plaintiffs is appropriate. The declarations attached to this Motion show that the practice of off-the-clock pre- and post-shift activity was widespread. (See Exh.A-H). These declarants indicate it was an unwritten, but stated policy to require this work in addition to their normal

---

[4]    While Plaintiff contends the two-stage approach is the proper standard to be used, the evidence set forth herein is sufficient to support a finding under the Rule 23 approach as well.

duties. Plaintiff Owens and former Sales Manager Archer's declarations both reflect inquiries to the Human Resources Department about this issue. Both individuals were told that GEICO does not pay for pre- and post-shift time. The declarations presented are from six different call centers and for individuals who worked in different positions. The declarants all indicate that unpaid pre- and post-shift activity was GEICO's policy.

One of the factors courts often consider is some evidence of similarly situated individuals who desire to opt in and who should be given notice of their right to do so. The fact that 27 other individuals have elected to join the case without a notice evidences this fact. *See Dybach*, 942 F.2d at 1567-68. These consents come from individuals who worked at the Dallas, Texas facility and from GEICO facilities in states other than Texas. Considering that no notice has been issued, this is quite a showing of interest. Consequently, this Court should authorize notice to potential plaintiffs in the form attached to the Appendix as Exhibit I and allow the potential plaintiffs to file the consent form attached hereto as Exhibit J. Given the weight of the showing made by Plaintiffs, Court-approved to potential plaintiffs is appropriate.

**B.     Relief Sought:  Issuance of Notice to Potential Plaintiffs and Disclosure of Names and Addresses**

To facilitate the Notice process and preserve the rights of those who have not yet opted in, Plaintiff has attached a proposed Notice and proposed Consent form to be approved by the Court. (See Exhs. I and J). These forms were based on the Notice and Consent forms issued by this Court in *Barnett*, though they have been modified for this particular case. Plaintiff seeks to notify a group of potential plaintiffs described as follows:

> All current and former hourly paid, telephone-dedicated employees who worked in GEICO's call centers as Sales Associates, Customer Service Representatives, Direct Handlers, Billing Associates, or PBX employees who worked at GEICO between March 25, 2000 and the present. This includes all hourly paid,

telephone-dedicated employees in the sales, customer service, claims, billing, or PBX departments, regardless of precise job title.

Additionally, Plaintiff seeks an Order from this Court requiring Defendant to disclose the names and last known addresses of those included in the group to be notified. Plaintiff requests this information be provided within 11 days from the entry of the Court's Order and in a usable electronic form to reduce any delays in sending out the Notices. Plaintiff requests the potential plaintiffs have ninety (90) days after entry of the Court's order to opt in to the case, unless good cause can be shown as to why the Consent form was not mailed by the deadline.

## IV.
### CONCLUSION

In order to facilitate the purposes of the FLSA's collective action provisions, this Court should, in keeping with its prior ruling, authorize a Court-approved notice to be issued by Plaintiff to potential plaintiffs. Such a Notice will allow those employees whose rights are eroding each day to be informed of this action and their right to join. Plaintiff has met her burden to show that other similarly situated individuals exist and are interested in asserting their claims.

Respectfully submitted,

EDWARDS & GEORGE LLP

By: _____

**J. DEREK BRAZIEL**
*Attorney in Charge*
Texas Bar No. 00793380
208 N. Market Street, Suite 400
Dallas, Texas 75202
(214) 749-1400   phone
(214) 749-1010   fax

**RICHARD J. BURCH**
S.D. Tex. No. 21615
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
5847 San Felipe, Suite 3900
Houston, Texas 77057
(713) 877-8788   phone
(713) 877-8065   fax

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

The undersigned conferred or attempted to confer with opposing counsel Eric Hemmendinger about this motion in an effort to avoid judicial intervention. The conference was held on April 15, 2003. Counsel for Defendants indicated that they were opposed to the relief sought in the motion because they do not agree that a notice to potential plaintiffs is appropriate.

J. DEREK BRAZIEL

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was delivered by **FAX and CERTIFIED MAIL, RETURN RECEIPT REQUESTED** on the following:

**Counsel for Defendant**
Robert D. Allen, Esq.
Jordan W. Cowman, Esq.
BAKER & MCKENZIE
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201

Bruce S. Harrison, Esq.
Eric Hemmendinger, Esq.
SHAWE & ROSENTHAL LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201

**ON THIS 15TH DAY OF APRIL, 2003.**

**J. DEREK BRAZIEL**